In our second case, Calliste v. Lor, Mr. Bader. Good morning, your honor. Good to have you, sir. Thank you. It's a pleasure to be here. May it please the court, Stephen Bader here on behalf of the appellant. This is a qualified immunity case where an officer on foot fired two shots at a vehicle as the vehicle drove toward the officer and past the officer. The two shots at issue in this case are akin to the first volley of shots. And past the officer. Did you say and past the officer? I did, your honor. Right. So based on our Waterman case, then those shots were a violation. I think that's really where the disagreement in this case lies. Our position when this court, in looking at the discussion in Waterman, is that you had several officers that were somewhere between 16 to 72 feet away from the vehicle. That vehicle was coming towards the officers but was not necessarily in the officer's direct path. And this court in Waterman goes out of its way to discuss that. There's about a six second period of time between when the vehicle lurches towards and comes at the officers and the officers begin firing. They then scramble up and fire what this court describes as a second volley of shots as the vehicle is driving away. What this court talked about in Waterman was that for this first volley of shots, where this vehicle is coming towards the officers, that even though the officers are not in the vehicle's direct path, their relation to the vehicle's projected path is critical because they were close enough where they could have been run over, I think this court says, in about one second had the vehicle simply changed directions. And that is what the facts in this case show. Well, that's not what the district court found. I'm not sure I agree with that, Judge Becker. The district court said at JA 1379, taking the facts in the light most favorable to the plaintiff, Officer Lohr appears to have been alongside plaintiff's car and out of the car's trajectory. He was alongside the car, and there's no dispute about that. Part of that becomes an argument about what exactly trajectory means, but I would state that the way the district court viewed this fact in the light most favorable to Mr. Caliste is that Officer Lohr was out of his vehicle, walking towards the passenger side of the vehicle, driven by somebody named Tanya Cox, who is a TSA employee, who had stopped as she was exiting the secured parking area. As Officer Lohr is on foot, the district court writes that he and the other vehicle were, quote, directly in the path of Caliste as Caliste exited. And that's the JA . . . As who writes? Officer Lohr? Correct. We don't care what . . . I mean, at this point, the district court has found facts. And the district court has said Officer Lohr was out of the car's trajectory. But you say it depends on how you define trajectory. Well, the district court is not finding facts so much as it's taking facts in the light most favorable to the plaintiff. And we have to . . . don't we? We do assess this thing based on the facts recited by the district court? Yes, Your Honor, and the record evidence in total. And what . . . Then why are you talking about what appellant says the facts are versus what the district court has found that the facts are? I don't believe that I am. What I was referring to was the district court's description of the evidence, the JA 1369, saying as Officer Lohr was on foot approaching Ms. Cox's vehicle, he was directly in the path of Caliste. That's a JA 1369. And then the district court writes that Caliste approached and narrowly passed Lohr, and Lohr then . . . Oh, so you're talking about at the initial encounter before he shot at him. Right. Right. And then the district court says as he passed him. Right. And that's really where the . . . And that's where we go back to Waterman. I think that's correct. Okay. I think that's correct. And that's really where what Waterman talks about is not so much that an officer is in a vehicle's direct path, but that the officer is in such a position where the vehicle presents a risk of deadly harm because they are close enough where the vehicle could move and come and strike them. And the facts in this case, where they most match up to the first volume . . . How is this? Okay, go ahead. Well, where they most match up with that first volume in Waterman is that there's no change in circumstances. What you have is a fairly rapid series of events here that occurs over the course of a couple seconds, and the vehicle's trajectory is consistent in the sense that it's always moving forward. It's not one of these cases where the vehicle stops, backs up, and moves in different directions, as we've seen in some of these other courts' decisions. This is a case where the vehicle continues effectively on the same path. The district court, in describing the facts, notes that there's about two seconds between when Officer Lohr shouts, get out of the car, and the shots are fired. And in Officer Lohr's description of that, it's really a product of time and space that explains why the shots were fired when the vehicle was next to him, as opposed to the vehicle had passed such that the threat had dissipated. And that's really what the Waterman decision talks about, is that if these officers are in a position where the vehicle presents a threat because it can turn and strike them in about one second . . . But this vehicle was past him. He was alongside it, and it had out of the trajectory of the vehicle, according to the district court. So how was it going to turn and strike him? I'm not sure I can answer, as a matter of fact, how he could turn and strike him. But what I would say is that Waterman talks about the fact that this closeness to the vehicle, this proximity, is a factor that would go into how a reasonable officer would perceive the threat. But it seems to me that over and over again you're disputing the facts. And we've said repeatedly that where a summary judgment is denied as to a particular claim solely because there's a genuine issue of material fact, we lack jurisdiction to consider it. So how do we have jurisdiction to even consider your claim? Judge Berner, we're not disputing the facts. All the facts here are taken in the light most favorable to the plaintiff as set forth in the district court's order. So what's the question of law? The question of law is whether Officer Lohr's response to this was objectively reasonable when looking at this court's jurisprudence on the first prong of qualified immunity, which would be whether an officer would have reason . . . or a reasonable officer in this officer's shoes would have reason to believe that they were faced with a deadly threat. But here we would argue a vehicle, which this court and the Supreme Court has recognized can present a deadly threat, coming at him so close and so near to him that he didn't have time . . . Well, the vehicle had come close and near, and then it went past him. And those are the facts as they are presented to us and that we have to accept as true. And so what you're saying is that we should find, as a matter of law, not fact, that at that point the officer would have maintained a fear for his life at that point? Correct. And I would note that that is the exact analysis issue and outcome in Waterman as to the first volley of shots. Of course, the second issue in these cases is whether they're . . . But in Waterman, the first volley of shots, the car was coming at the officer. Correct. And then the second volley was when it was past the officer, and that's where there was a use of excessive force. Right. What's the difference? I mean, here the car was past the officer, and he shot at the car. What's the difference? I think the difference is degree. In Waterman, what the opinion discusses is not just that the front bumper had passed the officer's position. It's that the officers had got out of the way, they scrambled up, and then they continued to fire as the vehicle passed on. Here, you're almost in an intermediate area where the vehicle is coming at the officer, and what the officer testified to and what's shown on the body camera footage is . . . But you keep saying it was coming at the officer, but it had passed. Well, before . . . And he was out of the trajectory. That's what we can't get past here. What I'm referring to is that this two-second . . . How he felt or why he would have felt reasonably threatened is what you're trying to get at. Right. I mean, there's no dispute that the vehicle was coming at him. I mean, the district court finds that. That's what all the witnesses testified to. Just not when he shot. Right. And also not going 25 to 30 miles per hour, as your brief and his testimony said. Where else is there anything in the record that the vehicle was going 25 to 30 miles per hour other than the officer's own testimony? That's the officer's testimony. All I can say about that is I think when the court . . . So I'm sure he charged him with speeding or reckless driving or something like that then, did they? Well, just to respond to that question, I do believe he was charged with several things stemming from this event. I believe all those charges were dismissed. But just to make sure I'm tracking with your Honor's concern, that's the officer's testimony. When the court watches the body camera footage, he's probably not going that fast. I'm not going to comment on that one way or the other because I don't think that's material. I think what's material . . . Well, you put it in your brief. That's what he testified to. Okay. So I assume you thought it was material. Well, I think what's material is that he's coming at the officer with such speed that the officer was not able to react or that the officer's description of why the shots hit the side of the vehicle was a product of his reaction time and how quick the vehicle came at him. And that is shown on the body camera footage. But to hit the second prong, the clearly established right prong, how the district court framed this is that under Williams v. Strickland, which was dictates that after the Fourth Circuit decided Waterman in 2005, where an officer fires into a vehicle once they are no longer in the car's trajectory, they violate a clearly established Fourth Amendment right. And I think that analysis does require some discussion. Waterman doesn't use the term trajectory. That term doesn't appear anywhere in the opinion. Williams, the court said, we've got disputed facts here how this shooting occurred. It could have happened one of three ways. Either the vehicle was coming at Officer Strickland, either it had passed Officer Strickland. I'm sorry, either it was passing or it had passed Officer Strickland. It said because of those facts, we have to assume that those disputes would be resolved in favor of the officer being outside of the car's trajectory. And that's the term that this court used in Williams. But Waterman goes out of its way to say the trajectory doesn't mean direct path. And the way the district court analyzed this issue, it wrote that because Officer Lohr testified, or it cited his testimony at JA 1381, where he said that the vehicle was driving toward me, and then when my shot went off, it was beside me. So at that point in time, it was coming by. That's when the shots went off. Does the police department's own investigation of this shooting have any impact on this case? I would argue that it does not. I know the court knows how that came out. And certainly, departments can internally handle these situations, how they see fit. But that would not change whether this gives rise to a constitutional violation, whether that right is clearly established. And I think that's really where the clearly established right argument is kind of fine-tuned. Because if officers are trained under Waterman, they would be trained to believe that if a vehicle is coming towards you, even if you are not in the vehicle's direct path, if you are in such a position where you could be run over if the vehicle would swerve toward you in a short amount of time, then lethal force may be warranted. That's the takeaway from Waterman with the first shots. An officer trained under that opinion wouldn't be under the belief that if a vehicle is coming at you, but they're coming so quickly, that you're not going to be able to get your shot off in time until the vehicle is next to you as quickly, then that driver would have a clearly established right to be free from lethal force. I would argue that that's the kind of armchair quarterbacking that this court has said really cannot be performed in these qualified immunity cases. You're talking about seconds. You're talking about an officer in the field who doesn't necessarily know what this driver's intent is when he's in a secured airport parking lot. That argument sort of makes the police department's investigation and result there have an impact here because that's not so much a court armchair quarterbacking. That was his fellow officers, the police department looking at it and finding that his use of deadly force was not justified. That's not armchair quarterbacking. They're part of his own team. That is the outcome, Judge Thacker, but what I would argue to this court is that the department's own internal disciplinary procedures, its finding, its determinations, those kind of internal determinations don't dictate the clearly established right prong. This court makes those determinations. That's not a decision that's made internally by departments. If departments want to do that, that is certainly their prerogative, but that would not dictate the outcome in this case. We would ask that this court reverse summary judgment, Officer Lohr, should be entitled to qualified immunity under the facts viewed in the light most favorable to Mr. Kleist. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you very much, Mr. Bader. Mr. Chu. Good to have you with us. Thank you so much, Judge King. Good morning, Your Honors, and may it please the court. Greg Tsui on behalf of Appellee Xavier Kleist. Throughout this appeal, Officer Lohr has repeatedly tried to contradict the district court's construction of the facts. That violates the jurisdictional limits of this interlocutory appeal, and it contradicts Lohr's own admission below that he was not in the path of Mr. Kleist's vehicle. Should we just dismiss it for lack of jurisdiction? You could do that, Your Honor. We noted that in our brief. We think Lohr's arguments are so fact dependent that he really doesn't raise, as you pointed out, Judge Berner, any question of law that this court has jurisdiction to review, but this court could also simply refuse to accept any of his factual arguments, take the facts as the district court construed them, and we think if you do that, this case is quite clearly controlled by the Waterman line of cases. That's the first point I wanted to make today, that Waterman clearly established the law here, that officers cannot shoot at a moving vehicle if they are not in the vehicle's trajectory, and Judge Thacker, as you noted, the district court's factual findings line up perfectly with that rule. The district court said in exactly those words that Officer Lohr was alongside the car and, quote, out of the car's trajectory when he fired. It really makes this an open and shut case, and this court has been . . . On this kind of a ruling, the court's really not making factual findings. It's making a factual recitation. You're exactly right, Judge King, and I apologize if I misspoke. The point is that the district court here concluded that a reasonable jury could find that Officer Lohr was out of the car's trajectory, and in this interlocutory appeal, the court is bound to accept the facts that the district court concluded a reasonable jury could find. As I was saying, this court has been consistent in how it describes the rule. I heard my friend on the other side say that the Waterman case doesn't use the word trajectory, but Waterman quite clearly talks about the exact same guidance that this court has then applied consistently in cases like Crine, that was in 2014 before the conduct at issue here, and in Williams, which addresses facts that opposing counsel has never tried to  distinguish, the district court notes that in its opinion, that before the district court, Officer Lohr offered no argument that the facts of Williams can be distinguished from the facts in this case. In Williams, the court was applying the same body of clearly established law, that's Waterman, as well as cases subsequent to Waterman, but before the conduct at issue here, like Crine, like Lee, and concluded that a reasonable jury could find that the facts line up perfectly with the facts of those cases. But Williams was decided after the facts at issue here. Say it again. I apologize. Williams was decided subsequently. It was, Your Honor. It was decided in 2019, but the conduct at issue in Williams occurred in 2012, and Williams was a qualified immunity decision, which means that the court was asking, at the time of the shooting in 2012, was the law clearly established? And this court said, at page 770 of Williams, in light of Waterman, there can be no question that the right Williams seeks to vindicate was clearly established on the day he was shot, so six years before the conduct at issue here. This case is actually even easier on the clearly established prong, because, again, you have cases decided subsequent to 2012, consistent with Waterman, like Crine, and you also have, as Your Honors pointed out, the police department's own review of the evidence in this case, under the policies governing the use of force by this officer that were issued in 2016, so two years before the conduct at issue in this case. And Lohr's own police department concluded that he didn't face an imminent danger, and that he wasn't justified in using deadly force, and it disciplined him for violating the policies that were promulgated two years before the conduct at issue here. I heard my friend on the other side say that that discipline has no relevance here, and that's just incorrect, because that is evidence . . . Is that admissible evidence? We think so, Your Honor, and it's certainly in the summary judgment record. Again, that's the police department, the department most responsible . . . Did Judge Cogburn deal with whether it was admissible or not? I don't know if he did, Your Honor. I'm happy to look and find . . . Did you all have an argument on this case before the judge, or was it ruled on paper? Judge Cogburn did hold a hearing on this motion, Your Honor, so there was full opportunity for briefing and airing of any issues, and based on the full record, Judge Cogburn properly recognized that there's plenty here for a reasonable jury to construe the evidence in our favor and find that Officer Lohr was out of the car's trajectory. I heard there being a dispute even between Officer Lohr and his counsel. I heard his counsel say today that he questions Officer Lohr's claim that the car was moving at twenty-five to thirty miles per hour. I think that only reinforces what the district court recognized, which is that a reasonable jury could easily discredit Officer Lohr's claims in his deposition. At this stage, the district court was required to assume that the reasonable jury would do that, and this court is bound by what the district court concluded about the construction of the evidence. I also wanted to point out . . . Did you argue the case in front of Judge Cogburn? I did not, Your Honor. That was my co-counsel, Michael Littlejohn. Now, if we sustain Judge Cogburn, are you all going to represent this fellow at the trial? Mr. Littlejohn will. My office actually focuses on appeals, so we're not equipped . . . You're the appeal expert. I am someone who does appeals. That's correct, Your Honor. The last thing I wanted to point out is just that, Judge Berner, as you said, I think the critical facts here are that the car passed the officer, and it passed him at the time that he fired his shots. That was the critical fact in Waterman that distinguished the first volley from the second volley, that unlike the first volley when the car was coming towards the officer, at the time of the second volley, the car passed him, passed them rather, and this court held that in that moment and in that position, the officers were out of danger. They did not face a danger of being hit, and thus there was no justification for deadly force. The other factor that Waterman considered actually weighs even more in favor in this case because, remember, the other critical factor in Waterman was the fact that the officers knew that just prior to the first volley, the car had already been used as a deadly weapon. The car had already attempted to run an officer off the road, and the court took that fact to inform how a reasonable officer would anticipate whether or not at the time of the first volley the car might turn towards the officers. Here, in contrast, Lohr himself admitted, and this is at JA 885, that he had no reason to believe that the driver of the car had committed a violent crime or would commit a violent crime. And so there was even less reason to think that the car was going to be used as a deadly weapon on top of the fact that it just couldn't, on top of the fact that, as in Kryne, as in Williams, he was in a position where he was, quote, no longer in danger of being hit. That's Kryne at page 190. Well, these all seem to be factual disputes that we lack jurisdiction to consider. I completely agree, Judge Berner. And so this court could easily just say all of the arguments that Lohr has raised are simply not within the court's jurisdiction and reject the appeal for that reason. If there are no further questions, I'll just reiterate that the District Court's factual determinations resolve this appeal because they line up perfectly in the exact terms with the rule in Waterman. Lohr cannot dispute those determinations in this appeal, and they're all this court needs to affirm. Thank you. Thank you very much, sir. Mr. Bader? Mr. Bader? This case really finds itself almost in the middle of Waterman. I mean, Waterman talks about the shots that are fired as the vehicle is coming at the officers, that those were constitutionally permissible, and then it talks about the second volley after the vehicle was driving away from the officers. We're in the middle here. And what we would argue is that taking all this evidence in the light most favorable to Caliste, Officer Lohr was in this vehicle's direct path before he fired. The court noted that. Officer Lohr had about two seconds between when he said, get out of the car, he can also be seen holding up his hand, and when the first shots are fired. The reason the shots are fired into the side of the vehicle is a product of Officer Lohr's reaction time. And as we put out in our brief, it would be, we would argue an incorrect application of Waterman to say that it would allow deadly force when a vehicle is coming at the officers, but say deadly force is improper if the officer had such limited time and space to react that by the time their finger pulled the trigger, the car was now next to them. If as here, what the evidence shows is they were so close to the officer that the officer could have been run over in about one second had the vehicle turned. That's discussed in Waterman. That's what the body worn camera footage shows here. That's what the evidence shows here. That is where this case is distinct from Williams versus Strickland, where this court goes out of its way to say, we have competing factual evidence as to where this officer was when the shots were fired. That does not exist here. Everybody agrees where the officer was and where the shot hit, where the shot hit the vehicle. The dispute is how the officer perceived it. And even that's how the district court framed this issue in denying summary judgment, saying that a fact finder could find that his view was unreasonable, but of course reasonableness in this context is a question for the court. Unless the panel has any questions, I want to be helpful, but I don't want to repeat myself. We would ask for this court to reverse and find that officer law is entitled to qualify immunity. Thank you very much. Thank you. We appreciate it. And we'll come down and Greek council and then we'll take a short break. Madam clerk. This honorable court will take a brief recess.
judges: Robert B. King, Stephanie D. Thacker, Nicole G. Berner